**COHN et al. v. KRAMER et al.**

No. 1387.

District Court, E. D. Michigan, S. D.

May 6, 1941.

Decree Affirmed Jan. 15, 1942.

See 124 F.2d 791.

Joseph B. Beckenstein and Paul J. Wieselberg, both of Detroit, Mich., for plaintiffs.

Ralph E. Routier, of Detroit, Mich., for defendants.

MOINET, District Judge.

Plaintiffs herein filed their bill of complaint in the Wayne County Circuit Court in chancery, against Kramer and wife, and B. C. Schram, receiver of the First National Bank-Detroit, which case was removed to this court by Schram, the receiver.

This controversy grows out of a lease, granted to the plaintiffs herein, for the Kramer Movie Theatre, located on West Michigan Avenue in the vicinity of the intersection of Livernois Street, the defendants herein, Kramer and wife, being the lessors. The facts herein show that prior to the lease in question, a man named Krim held a lease of the Kramer Theatre, with several years yet unexpired, and the plaintiffs herein besought the defendant Kramer, in an endeavor to acquire the so-called "Krim lease". The plaintiffs, not desiring to inform Krim that they were contemplating the purchase of his lease, acted through an undisclosed principal, and after considerable negotiation, acquired the Krim lease upon the payment of the sum of Ten Thousand ($10,000) Dollars to Krim; the defendants Kramers being without sufficient funds, the plaintiffs advanced the sum of Six Thousand ($6,000) Dollars, which together with Four Thousand ($4,000) Dollars of Kramer's money was paid to Krim, it being understood between the parties that the money so advanced by plaintiffs herein was to be credited upon future rents under such lease.

That prior to this time, the plaintiffs, upon innumerable occasions, had conferences with the defendants Kramers herein, in an endeavor to acquire the Krim lease and also to operate the Kramer Movie Theatre, and during these numerous conferences it is claimed by the defendants that the said plaintiffs herein repeatedly made statements regarding their ability to operate a movie theatre; that the defendants then and there knew that plaintiffs herein at that time owned the so-called Senate Theatre, and the so-called Crystal Theatre, both of which were located within the mile-zone of the Kramer Theatre. That, for the purpose of inducing the Kramers to consent to the Krim lease being assigned to the plaintiffs herein, said plaintiffs represented that by a lease to them, competition would be eliminated in this district, and that the Senate Theatre would not be operated in competition with the Kramer Theatre; that they had had more experience in the operation of movie theatres than the tenant Krim and knew how to operate them; that they had the absolute right and privilege of contracting for license of exhibition of motion picture film products, which right Krim did not possess; that the Kramers were to receive substantial return on their investment, which they could not secure under their own, or anyone else's operation except the plaintiffs'; that they would receive a guaranteed rental with a percentage of overage with the operation, profits and management which only Cohn and Shevin could secure in that zone or vicinity; that the theatre would be continuously operated with adequate, efficient management, and advertising; that with their purchasing power and right to procure products, Kramers would be better off and have a larger return than ever before received; and plaintiffs stated that they had membership in Cooperative Theatres of Michigan, Inc., which controlled the licensing of distribution of films, prints for exhibition, and that plaintiff, Ben Cohn was a director of Cooperative, and if defendants doubted their ability to secure films for exhibition at the Kramer Theatre, defendants were invited to accompany plaintiffs to the Company's office and meet its General Manager; and later at a meeting at said Cooperative's where the subject of procuring licenses for film exhibition at the Kramer's and plaintiffs' theatres was discussed, the plaintiffs and the general manager of Cooperative's represented that there was no question as to plaintiffs having absolute control of making contracts for licensing of films and being in a position to exhibit same at the Kramer Theatre. Upon this record, there is no serious doubt arising but that such representations and statements were made, and that they were the inducing cause for the bringing about of the assignment of the Krim lease to the plaintiffs herein.

It further appears that plaintiffs represented to the defendants, Kramers, that the plaintiffs proposed to operate the finest theatre in the City of Detroit, that it would be profitable to the Kramers, and that they would produce the finest pictures that would be obtainable.

It was known by the parties that in November, 1930, the City of Detroit commenced condemnation proceedings to widen Michigan Avenue from Junction Avenue to Livernois Avenue, which widening project would involve the property of the Kramer Theatre by taking a portion from the front of such theatre for highway purposes; that these condemnation proceedings and verdicts were finally confirmed in October, 1937.

That after acquiring the Krim lease, and on May 26, 1936, the plaintiffs herein assumed the Krim lease and entered into an instrument of lease modifying somewhat the terms and conditions of the Krim lease and containing numerous provisions with reference to rentals, reconstruction of the theatre and other things; that the Kramer Theatre was still in operation, and the condemnation proceedings pending, and the plaintiffs herein besought the Kramers to procure from the City authorities the right to continue longer to operate the Kramer Theatre, prior to the actual taking of the property of the Kramer Theatre.

That preparatory to the reconstruction of the Kramer Theatre the Kramers engaged the services of a nationally known architectural firm, to prepare the preliminary sketches, plans and to supervise the erection and construction of the building; Kramers also employed prominent and leading mechanical tradesmen, thoroughly capable to perform the construction work. Plaintiffs were given the opportunity of examining the preliminary plans and sketches, and requested to make suggestions before the final plans were approved f r reconstruction, which they did, and announced themselves as satisfied with the plans, specifications and all details. Plain-

tiff Cohn claimed that he was unable to read blueprints or understand specifications; this claim under all of the circumstances is not established.

Such plans and specifications, and an office, were maintained at the premises during the progress of the work and plaintiffs were there on many occasions; they became well acquainted with the superintendents and workmen, and plaintiffs thought so well of their work that they engaged their services or through their contact, had them make various sketches, plans, lay-outs, and suggestions for the expenditure of approximately Forty Thousand ($40,000) Dollars for the modernization of their Senate Theatre at about the time of the Kramer reconstruction; and it appears that some of the men who had the principal charge of the work for the general contractor, and charge of the installation of the heating and ventilating systems, as late as the evening of the opening, stated that everything was in good condition and working order, and if anything should happen, to call these gentlemen at their homes by telephone and claimed that they received no complaints except notification that one radiator was not working, and this was immediately given attention.

That thereafter, plaintiffs were notified by Kramer, by letter of January 21, 1939, that the Kramer Theatre would be ready for occupancy February 1, 1939; that plaintiffs herein took possession on February 11, 1939, and the said theatre and its equipment were all in good operating condition and working order, and without complaint; that the plaintiffs informed Kramer that they had expended too much money for reconstruction and furnishings; that they had made a test of the equipment the night before, and that everything had worked perfectly.

Plaintiffs in their bill of complaint alleged many structural defects, a few of which they asserted upon the hearing. These consisted of defective seats, defective floors, poor ventilation, improper acoustics, the lack of a man-hole in the boiler of the heating equipment, and water seeping into the building upon occasions. Instead of performing their duties under the terms of the provisions of the lease, such as to maintenance and repair, in their bill of complaint herein they seek to reduce the rental under the terms of such lease by reason of the failure of the defendants to perform their obligations in respect to reconstruction. It was known by all of the parties that the seats in the old Kramer Theatre had been used for some years, and were to be re-installed upon completion of the reconstruction work; in fact, it was provided for in the lease, that if the plaintiffs herein desired to install new seats in such theatre, they would be entitled to a credit on such purchase for the old seats which were then in the theatre. As to a cooling system, pursuant to an understanding between the parties, the building was planned and designed to provide for a cooling system, which plaintiffs advised defendants they would install.

Upon the question of the lessened seating capacity, there is no merit in this claim. The reduction in seating capacity was made at the request of the plaintiffs herein for the sole purpose of avoiding the necessity of an additional operator in such theatre, thereby reducing their expense several thousands of dollars per annum.

The court upon a careful consideration and study of all of the evidence presented by the plaintiffs herein in said cause finds and determines that their claims are unfounded and are not established by the proofs presented herein, and that their bill of complaint praying for a reduction in rentals as charged therein, and for an injunction restraining the Kramers from proceeding to cancel the lease herein, is hereby dismissed.

As to the defendant Schram, receiver, no proofs were presented, and it was agreed by the parties hereto that the lease interest of the Kramers herein was assigned to the receiver as security for indebtedness, and certain portions of the monthly rental were paid to such receiver, which is satisfactory to his counsel; however, upon the disposition of this case, it is desired that his rights and interests herein will be protected.

The defendants Kramers filed their answer and a cross-bill praying for certain relief. It charges the plaintiffs herein with fraud in inducing them to permit an assignment of the Krim lease to the plaintiffs and it charges the plaintiffs herein with a violation of the terms and conditions of the lease entered into between the parties hereto and they pray for a cancellation of such lease as well as damages for such violations.

The plaintiffs herein are not amateurs in the maintenance and operation of movie theatres; they own and operate the Senate Theatre and the Crystal Theatre in this particular zone; the plaintiff Cohn is a member of the board of directors of the so-called Cooperative organization, which is in the nature of a trust and control of pictures in the City of Detroit; and members thereof have the exclusive right to all of these pictures, which are the best that are produced in the movie industry, and to the exclusion of other movie operators who are not members thereof. All of this was represented to the defendants Kramers herein during the negotiations for the lease in question.

Clause (t) of the lease provides: "It is mutually agreed that the parties of the Second Part (plaintiffs herein) shall use their best efforts to obtain product and adopt a management policy which will assure a successful operation of the theatre leased hereunder where such efforts are under the control of the Parties of the Second Part."

The court finds and determines from the evidence in this case that the provisions of the lease were violated, and the plaintiffs herein failed in the performance thereof.

This court is firmly impressed that from the very outset, these plaintiffs had planned to acquire control of the Kramer Theatre through the Krim lease, and thereafter proceeded to carry out such plans; that shortly after taking over such theatre, and before reconstruction, they operated the same in a fairly satisfactory manner, but did not apply their best efforts, in management, or operation, or quality of movie pictures that were contemplated by the parties; that after reconstruction, the court is thoroughly satisfied from the evidence in this case that said plaintiffs set about to carry on their plan of operation, as indicated by the proofs herein, by first employing incompetent management and operation, by making numerous supercritical claims in reference to defective reconstruction, by making claims in reference to the reduction of the seating capacity, by false advertising, and by switching picture contracts of first-class pictures from the Kramer to the Senate; by producing sex pictures and others of that class, which caused considerable criticism and comment by the patrons of the Kramer Theatre in this district; by rebuilding the Crystal Theatre which was eliminated in condemnation, when it was understood and represented to the defendants herein that the plaintiffs did not intend to rebuild the Crystal Theatre; by eliminating matinees, while at such time they displayed advertising at the Kramer Theatre that matinees would be held; by placing nearly all of the best pictures obtainable in the Senate Theatre, owned by the plaintiffs herein, and depriving the defendants of such class of pictures as was understood and contemplated by the parties hereto, to be placed in the Kramer Theatre.

That all of such actions and conduct by said plaintiffs impressed this court that there was a purpose and object in mind in an endeavor to justify the manner of the operation and the management of this theatre and its conduct thereof, together with the class of pictures that were presented to the public in the Kramer Theatre, and numerous other acts and doings, all of which persuaded this court that at the very outset there was formed and planned by studious effort, an endeavor on the part of said plaintiffs to embarrass the reputation of the Kramer Theatre in that community, with its patrons, and smother it as a competitive theatre in this particular zone, the court having in mind as well that the plaintiffs were the owners and operators of two competitive theatres in this zone.

From all of the evidence in this case the court finds and determines that the plaintiffs herein wilfully and intentionally violated the terms and conditions of Clause (t) contained in the lease herein. That they did not use their best efforts to obtain product and adopt a management policy which would assure a successful operation of the theatre leased where such efforts were under the control of the plaintiffs herein. On the contrary, they did otherwise. The returns from the Kramer Theatre definitely establish such failure on their part. The Senate and the Crystal Theatres were favored, and the returns from such theatres indicate this to be true, while at the same time the Kramer Theatre was embarrassed by lack of proper and efficient management and also assuredly by lack of presenting a class of movie pictures that was contemplated by all of the parties, at the time the Krim lease was secured by the plaintiffs herein. The Kramers were misled, to their serious and financial injury, by becoming responsible

for the Ten Thousand ($10,000) Dollars which was paid to Krim, and also because of the lack of proper management and picture product; their financial returns were considerably reduced until there came a time when there was an actual loss on returns in such Kramer Theatre, and during such time there was a considerable profit to the plaintiffs herein in the Senate and the Crystal Theatres.

It is obvious to the court that all of this could not "just happen". The court is persuaded that this was the result of the fraudulent misconduct of the plaintiffs herein in the management and in the operation of the Kramer Theatre.

From all of which, the court finds and determines that the defendants, Kramers, are entitled to relief under their cross-bill herein, and it is hereby ordered and determined that the lease between the parties hereto is cancelled and held for naught.

■ This being an equity case, as removed from the state courts, the court is called upon, in all of the circumstances, to endeavor to do justice between the parties. Upon the question of damages claimed by the cross-plaintiffs herein, one element of which is unliquidated, the court is of the opinion that there are not sufficient definite facts to furnish a basis upon which the court could rely to fix such damages.

Upon the question of liquidated damages, the Four Thousand ($4,000) Dollars advanced by the Kramers upon the procurement of the Krim lease by the plaintiffs herein, and the subsequent amounts which, according to the contract, were to be deducted by the plaintiffs herein from certain months of the rentals during the period of said lease, the court finds and determines that the cross-plaintiffs herein are entitled to recover the sum of Four Thousand ($4,000) Dollars so advanced by them, and also any subsequent amounts which were deducted from the rentals under the lease, by the plaintiffs herein, which amounts are to be determined from the record herein. The court is firmly convinced that the allowance of such damages, which were the direct result of the fraudulent conduct of the plaintiffs herein, is simple justice, and equitable between all of the parties involved herein.

Accordingly, a decree may be settled herein, in conformity to this opinion, including a dissolution of the injunction granted herein, and if the necessity arises, a motion, upon notice, for the appointment of a receiver, pending the proceedings hereon, and dismissing the bill of complaint filed by said plaintiffs, and allowing costs to the cross-plaintiffs herein, to be taxed.